**Mark E. HANSON, Esq.,**
**Plaintiff–Appellant,**

v.

**UNITED STATES AGENCY FOR INTERNATIONAL DEVELOP-MENT, Defendant–Appellee.**

No. 03–2305.

United States Court of Appeals, Fourth Circuit.

Argued: May 5, 2004.

Decided: June 16, 2004.

**ARGUED:** Jonathan David Shaffer, Smith, Pachter, McWhorter & Allen, Vienna, Virginia, for Appellant.   Steven E. Gordon, Assistant United States Attorney, Office of the United States Attorney, Alexandria, Virginia, for Appellee. **ON BRIEF:**

Paul J. McNulty, United States Attorney, Alexandria, Virginia, for Appellee.

Before WILKINSON and WILLIAMS, Circuit Judges, and BALDOCK, Senior Circuit Judge of the United States Court of Appeals for the Tenth Circuit, sitting by designation.

Affirmed by published opinion. Judge WILKINSON wrote the opinion, in which Judge WILLIAMS and Senior Judge BALDOCK joined.

WILKINSON, Circuit Judge:

Attorney Mark E. Hanson represents a contractor embroiled in a construction dispute concerning a USAID-funded project in Egypt. Hanson claims that the United States Agency for International Development ("USAID") unlawfully withheld a document relevant to the dispute in violation of the Freedom of Information Act ("FOIA"). This document, prepared by a lawyer hired by the private project engineer, laid out the lawyer's analysis concerning the dispute that was of common interest to USAID and to the project engineer. The lawyer's contract with the project engineer expressly provided that only USAID and its Egyptian partner should receive the document. Hanson argued that the document was subject to FOIA disclosure. The district court granted summary judgment to USAID and held that the document fell under the FOIA exemption for attorney work product prepared in anticipation of litigation. We affirm that judgment. While FOIA exists to facilitate greater government transparency, the government has as much right to undisclosed legal advice in anticipation of litigation as any private party.

## I.

Appellee USAID is a federal agency that finances and oversees development projects in foreign countries under the government's foreign assistance program. *See* 22 U.S.C. § 2151 et seq. USAID's responsibilities include carrying out development activities in Egypt. *See* 22 U.S.C. § 2346. One of USAID's projects was the construction of a system of water and sewage treatment facilities for the Aswan cities in Upper Egypt. While USAID financed the project, the National Organization for Potable Water and Sanitary Drainage ("NOPWASD") served as the Egyptian government's agency implementing the project.

In 1995 USAID retained the engineering firm Camp Dresser & McKee International, Inc. ("CDM") to design the waste and sewage treatment facilities and to provide construction, administration and management services for the project. In 1998 following a competitive bidding process, NOPWASD awarded the construction contract to build CDM's design to a joint venture between Contrack International, Inc. and Morrison Knudsen International, Inc. (the "JV"). The JV's contract conformed with USAID's Host Country Contracting Mechanism. Under this framework, construction firms directly contract with the implementing agency of the host government, while USAID retains certain approval rights, including the right to approve material changes to the contract, such as the level of compensation.

In September 2000, the JV asked NOPWASD for an additional $38 million to compensate for time delays. In April 2001, CDM in its capacity as project engineer evaluated the JV's request and found that the compensation should be substantially lower. CDM and the JV met several times, yet failed to resolve the dispute. In May 2001 at USAID's urging, CDM hired Richard J. Roy of Roy & Associates as a neutral third party to evaluate the negotiation process, the parties' positions, and the

impediments to settlement. Roy's contract provided that he was to provide a final report ("Roy Report") of his findings to NOPWASD and USAID. Roy's contract neither permitted nor provided for disclosure to any other party. The construction dispute still has not been resolved, and the JV has threatened to sue USAID and CDM to secure the compensation to which it claims entitlement.

Appellant Mark Hanson is a partner in the law firm representing one of the JV members. In February, 2002, Hanson filed a FOIA request with USAID requesting the disclosure of a number of documents related to the dispute, including the Roy Report. USAID produced most of these documents, but refused to produce the Roy Report on the grounds that it fell under the deliberative process and attorney work-product privileges of 5 U.S.C. § 552(b)(5).

Hanson filed suit in district court claiming that USAID had unlawfully withheld the Roy Report. The district court granted USAID's motion for summary judgment and ruled that the withheld document was exempt from disclosure under 5 U.S.C. § 552(b)(5), because it constituted attorney work product prepared in anticipation of litigation. Although Roy voluntarily released a draft of his report to the JV during the course of the FOIA litigation, the district court held that USAID had not authorized Roy to do this and thus had not waived its right to claim the FOIA exemption. Hanson appealed the district court's decision to this court.

## II.

■ The question of whether a district court properly granted the government summary judgment in a FOIA action is one of law which we review de novo. *Ethyl Corp. v. U.S. E.P.A.*, 25 F.3d 1241, 1246 (4th Cir.1994). FOIA provides that, subject to certain statutory exemptions, federal agencies shall "upon any request for records which reasonably describe such records ... make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A) (2000). "The basic purpose of FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978).

■ Nonetheless, FOIA specifies nine exemptions from its general disclosure provisions. 5 U.S.C. § 552(b). These exemptions are designed to safeguard various public interests against the harms that would arise from overbroad disclosure. In general, FOIA exemptions should be narrowly construed to favor disclosure. *Bowers v. U.S. Dept. of Justice*, 930 F.2d 350, 354 (4th Cir.1991). The burden of demonstrating that a requested document falls under an exemption rests on the government. *City of Virginia Beach, Va. v. U.S. Dep't of Commerce*, 995 F.2d 1247, 1252 (4th Cir.1993); 5 U.S.C. § 552(a)(4)(B). The government can meet this burden by describing the withheld material with reasonable specificity and explaining how it falls under one of the enumerated exemptions. *Miscavige v. I.R.S.*, 2 F.3d 366, 367–68 (11th Cir.1993). As a general rule, these and all other FOIA determinations should be resolved on summary judgment. *Id.* at 369.

The relevant exemption here is Exemption 5. Exemption 5 provides that FOIA disclosure rules do not apply to "interagency or intraagency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). Courts have interpreted Exemption 5 to exclude from disclosure docu-

ments produced under the attorney work product doctrine and the deliberative process privilege. *N.L.R.B. v. Sears, Roebuck & Co.*, 421 U.S. 132, 149–50, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

### III.

To determine whether the district court properly found that USAID could withhold the Roy Report under Exemption 5, we consider three issues. First, we must analyze whether USAID enjoyed an attorney-client relationship with Roy, such that the attorney-client privilege would even apply to communications between them. *See Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981). Second, we must determine whether the Roy Report fell under the attorney work product exemption to FOIA. *See* 5 U.S.C. § 552(b)(5). Third, we must consider whether Roy's unilateral release of the report to the JV amounted to a waiver of this privilege. *See In re Doe*, 662 F.2d 1073, 1079 (4th Cir.1981). We shall examine each of these issues in turn."

### A.

■ The attorney-client privilege is "the oldest of the privileges for confidential information known to the common law." *Upjohn*, 449 U.S. at 389, 101 S.Ct. 677. The Supreme Court has long recognized that the attorney-client privilege merits special protection "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Id.* at 389, 101 S.Ct. 677. Thus, "if a party demonstrates that attorney-client privilege applies, the privilege affords all communications between attorney and client absolute and complete protection from disclosure." *In re Allen*, 106 F.3d 582, 600 (4th Cir.1997). This privilege protects "not

only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn*, 449 U.S. at 390, 101 S.Ct. 677.

■ Here Hanson challenges the existence of an attorney-client relationship. He asserts that no attorney-client relationship exists because Roy was not retained as a lawyer, but rather as a construction consultant to observe the dispute negotiations. But the incontrovertible fact of this case is that Roy is indeed a lawyer. Roy was educated as an engineer and had extensive experience in many facets of the construction industry. But Roy's brochure also held him out to be a lawyer with a degree from Tulane Law School. The brochure further laid out Roy's memberships in multiple state bars and other bar organizations. It underscored his extensive experience in dispute resolution and other law-related tasks, noting that "as a member of the American Arbitration Association he has arbitrated and mediated over 150 disputes, resolving hundreds of millions of dollars in claims." It is clear that Roy both advertised himself and was hired by CDM as a lawyer who could bring both his legal skills and construction expertise to the job.

That unique combination of skills was likely why Roy was retained in the first place. It is hardly uncommon for lawyers to possess a facility or expertise in some other discipline. That doesn't mean they are any less lawyers. So long as Roy was being asked to exercise his extensive legal skills, his engineering experience does nothing to disqualify him as an attorney. The view that a lawyer may be only that— and nothing more—is too insular for an interconnected world.

■ Hanson claims that, even if any attorney-client privilege exists, the privi-

lege would extend only to Roy's relationship with CDM and not to USAID. Hanson emphasizes that CDM is a private contractor who hired Roy and that CDM is not even a party in the FOIA litigation. In contrast, he argues USAID had no contract with Roy, and it was CDM's contract with Roy that shaped the contours of any information that Roy gave USAID. Therefore, Hanson asserts that CDM's potential claims to an attorney-client relationship with Roy are irrelevant here, because USAID had no such relationship with Roy.

▮ Courts have established rules as to when the attorney-client privilege may apply to multiple parties. Described " 'as an extension of the attorney client privilege,' " *United States v. Aramony*, 88 F.3d 1369, 1392 (4th Cir.1996) (quoting *United States v. Schwimmer*, 892 F.2d 237, 243 (2d Cir.1989)), the common interest doctrine applies when two or more parties consult or retain an attorney concerning a legal matter in which they share a common interest. *Sheet Metal Workers Int'l Ass'n v. Sweeney*, 29 F.3d 120, 124 (4th Cir. 1994); *see also Cavallaro v. United States*, 284 F.3d 236, 249–50 (1st Cir.2002). In this context the communications between each of the clients and the attorney are privileged against third parties, and it is unnecessary that there be actual litigation in progress for this privilege to apply. *Aramony*, 88 F.3d at 1392.

USAID and CDM were both united by a common interest in resolving the construction dispute on favorable terms, and both received counsel on this matter from Roy. In fact, CDM hired Roy at the urging of USAID in order to resolve the financial dispute with the JV. CDM asked Roy to provide legal analysis and recommendations concerning the negotiations. But CDM's contract with Roy expressly provided that he would be submitting his final report to NOPWASD and USAID. Moreover, USAID funded the work of both CDM and NOPWASD and would eventually have to pay additional compensation that the JV would receive from a settlement. Thus, while CDM entered into the contract with Roy, USAID is clearly a real party in interest in the dispute. CDM and USAID shared a common interest and received common counsel from Roy on the matter. It is clear, then, that USAID had an attorney-client relationship with Roy and that confidential communications between Roy and USAID may be subject to the attorney-client privilege.

### B.

▮ Having established that USAID had an attorney-client relationship with Roy, we turn now to the question of whether the attorney work product exemption applies to the Roy Report. Exemption 5 of FOIA provides that FOIA disclosure rules do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption has been found to include documents protected under the attorney work product doctrine. *Sears*, 421 U.S. at 149, 95 S.Ct. 1504.

▮ To be considered attorney work product, a document must have been "prepared by an attorney in contemplation of litigation which set[s] forth the attorney's theory of the case and his litigation strategy." *Id.* at 154, 95 S.Ct. 1504. The exemption serves to provide a " 'zone of privacy' within which to think, plan, weigh facts and evidence, candidly evaluate a client's case, and prepare legal theories." *Coastal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 864 (D.C.Cir.1980). The

attorney work product exemption includes factual information prepared by an attorney in anticipation of litigation. *Martin v. Office of Special Counsel,* 819 F.2d 1181, 1187 (D.C.Cir.1987).

Hanson emphasizes Roy's disclaimer that he was not acting in a legal capacity and his subsequent affidavit to that effect. But we must judge a tree by its fruit. *See In Re Allen,* 106 F.3d at 603. It is obvious that Roy is a lawyer, and it is equally clear that Roy's work involved the direct application of his legal skills. He monitored settlement negotiations, exercised legal judgment in assessing the positions of the parties, recommended a settlement amount for the dispute, and advised USAID on how it should change the dynamics of the negotiation process. Roy was specifically asked to review the relevant contract documents between CDM and USAID and between the JV and NOP-WASD. He had to "sift[ ] through the facts with an eye to the legally relevant." *In re Allen,* 106 F.3d at 602 n. 9 (internal quotations omitted). These are all the types of things that lawyers do. Roy even signed the Roy Report with the letters J.D. following his name, which clearly reinforced the message that he was acting in his legal capacity.

Roy's legal analysis was also plainly performed in anticipation of litigation, a prospect not unknown to the construction industry. Roy's assessments of the party's respective positions, his analysis of the cause of the project delays, and his recommendation of an appropriate settlement amount all constitute legal analysis in anticipation of litigation. The fact that Roy's

contract called for him to submit his final report only to NOPWASD and USAID further suggests that the report was confidential counsel, intended to prepare the parties for potential lawsuits. As the district court put it: "[t]he Roy Report is properly protected pursuant to the work product doctrine because it was prepared by a consultant attorney for a USAID financed project, it contains the attorney's analyses, opinions and recommendations and was prepared in anticipation of litigation." The district court properly held that the Roy Report fell under the FOIA attorney work product exemption and granted summary judgment to USAID.*

### C.

■ Hanson claims finally that the attorney work product exemption was waived when Roy disclosed a draft of his report to Hanson. Hanson alleges that in September, 2001, Roy agreed to set aside a copy of his report for the JV, if the JV should request it. In late 2002 or early 2003, another official from the JV asked Roy for his report, which Roy sent at that time. Hanson asserts that he initially believed this copy was only a preliminary draft, but in August 2003 he found out that this was an unsigned copy of the final Roy Report. This disclosure forms the basis of Hanson's claim that USAID's claim to FOIA Exemption 5 has been waived. This point is important because it may affect future uses to which the report may be put.

■ A client can waive an attorney-client privilege expressly or through his

---

* Although the district court resolved this issue by holding the report was attorney-work product prepared in anticipation of litigation, USAID also claimed the Roy Report fell under the deliberative process privilege afforded by FOIA Exemption 5. We need not address this alternative ground in order to affirm the district court's decision.

own conduct. *In re Grand Jury Proceedings*, 727 F.2d 1352, 1355–56 (4th Cir. 1984). Implied waiver occurs when a party claiming the privilege has *voluntarily* disclosed confidential information on a given subject matter to a party not covered by the privilege. *Sweeney*, 29 F.3d at 125. However, an attorney may not unilaterally waive the privilege that his client enjoys. "[T]he ability to protect work product normally extends to both clients and attorneys, and the attorney or the client, expressly or by conduct, can waive or forfeit it, *but only as to himself.*" *In re Doe*, 662 F.2d at 1079 (emphasis added) (internal citation omitted).

Roy's unilateral disclosure of the Roy Report thus tells us nothing about whether USAID has waived its right to withhold the Roy Report. Roy as an attorney could not waive USAID's right without USAID's consent. Here the district court properly held that the fact USAID had not authorized Roy to disclose the report meant that USAID had not waived Exemption 5 of FOIA. In fact, Roy's contract with CDM expressly stated that Roy was to send the report only to NOPWASD and USAID. Hanson fails to point to any conduct by USAID, NOPWASD, or CDM that suggested that they intended to waive their attorney work product exemption.

## IV.

The government has the same right to undisclosed legal advice in anticipation of litigation as any private party. And there is nothing in FOIA that prevents the government from drawing confidential counsel from the private sector. Allowing disclosure here would impair an agency's ability to prepare effectively for litigation with private parties and thereby thwart its ability to discharge its functions in the public

interest. Accordingly, we affirm the district court's judgment.

*AFFIRMED*