RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 17a0068p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

DODA LUCAJ,

                                *Plaintiff-Appellant,*

      *v.*

FEDERAL BUREAU OF INVESTIGATION; UNITED STATES
DEPARTMENT OF JUSTICE,

                                *Defendants-Appellees.*

> No. 16-1381

———————

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 4:14-cv-12635—Terrence George Berg, District Judge.

Argued: January 27, 2017

Decided and Filed: March 24, 2017

Before: MERRITT, MOORE, and STRANCH, Circuit Judges.

———————

## COUNSEL

———————

**ARGUED:** Martin E. Crandall, CLARK HILL PLC, Detroit, Michigan, for Appellant. Derri T. Thomas, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellees. **ON BRIEF:** Martin E. Crandall, Andrew M. Mast, Zachary A. Rowley, CLARK HILL PLC, Detroit, Michigan, for Appellant. Derri T. Thomas, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellees.

———————

## OPINION

———————

KAREN NELSON MOORE, Circuit Judge. The Freedom of Information Act ("FOIA") "implements a general philosophy of full agency disclosure of government records," *Detroit*

*Free Press Inc. v. DOJ*, 829 F.3d 478, 480 (6th Cir. 2016) (en banc) (internal quotation marks omitted), subject to certain exemptions. At issue in this case is the exemption from disclosure for "matters that are . . . inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5) (2012). The Defendants-Appellees, the Federal Bureau of Investigation ("FBI") and the United States Department of Justice ("DOJ"), argue that "inter-agency or intra-agency" includes agencies of other countries. Their entreaty, which could be easily granted by an Act of Congress, cannot so easily be granted by us. We must follow the plain language of § 552(b)(5), which, as we discuss below, is limited to memorandums or letters between authorities of the Government of the United States. Therefore, we **REVERSE** the judgment of the district court, which granted summary judgment to the Government, and we **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

This case began with an FBI investigation into Plaintiff-Appellant Doda Lucaj, whom it believed to be connected to "attacks made by an ethnic Albanian group against facilities in Montenegro in hopes of influencing Montenegrin elections." R. 22-2 (Hardy Decl. ¶ 5) (Page ID #327). Lucaj was indicted by Montenegrin authorities in 2006 and was arrested shortly thereafter in Vienna, Austria. *Id.* Of the belief that his arrest was "illegal," and furthermore that the United States was involved, *see* R. 1 (Compl. ¶¶ 1–3) (Page ID #1–2), Lucaj sent a letter to the FBI requesting three pieces of information pursuant to FOIA:

1. Any and all information relating to any investigation, arrest, detention, and/or interrogation of Mr. Lucaj [related to his arrest, detention, and interrogation in Vienna, Austria on December 7, 2006].

2. Any and all documents relating to the same, including any and all FD-302s.[1]

3. The identities of any agents who participated and/or witnessed any interview or interrogation of Mr. Lucaj, including, but not limited to, FBI

---

[1] "FD-302s are the forms used by the FBI to record investigative activity, particularly, although not exclusively, the results of interviews." Office of the Inspector General for the Department of Justice, *Document Management in the FBI*, *in* An Investigation of the Belated Production of Documents in the Oklahoma City Bombing Case (Mar. 19, 2002), https://oig.justice.gov/special/0203/chapter2.htm.

Agents, Immigration and Customs Enforcement Agents and anybody else working on this.

R. 1-2 (May 11, 2012 Letter at 1) (Page ID #9); R. 22-2 (Hardy Decl. ¶ 6) (Page ID #328). Lucaj's requests were met with some bureaucratic delay,[2] so he requested that the district court order their production pursuant to § 552(a)(4)(B).

Since Lucaj filed his complaint, the DOJ and FBI have produced some responsive documents but have declared others exempt. *See* R. 17-5 (Brodfuehrer Decl. ¶¶ 8, 10, 15–25) (Page ID #285–86, 288–93) (citing, inter alia, 5 U.S.C. § 552(b)(3), (5)); R. 22-2 (Hardy Decl. ¶¶ 25–27) (Page ID #332–36) (citing, inter alia, 5 U.S.C. § 552(b)(3)).   Chief among the allegedly exempt documents were two eight-page requests for assistance ("RFA") from the Office of International Affairs ("OIA"), a part of the DOJ Criminal Division.  *See* R. 17-5 (Brodfuehrer Decl. ¶ 10) (Page ID #286).

The first of these requests was sent by the OIA to the Central Authority of Austria pursuant to a mutual legal assistance treaty ("MLAT"), *id.* ¶¶ 11–12, 22 (Page ID #286–87, 291), which obligates the two countries to "provide mutual assistance . . . in connection with the investigation and prosecution of offenses," Treaty Between the Government of the United States of America and the Government of the Republic of Austria on Mutual Legal Assistance in Criminal Matters, Austria-U.S., art. 1, ¶ 1, Feb. 23, 1995, S. Treaty Doc. 104-21 (1995). Although the request naturally sought information from Austria, it also contained information that the FBI did not want to disclose:  (1) "factual information possessed by the DOJ at the time the MLAT request was executed," (2) "legal theories of the case," (3) "the history of legal or law enforcement actions previously taken against [Lucaj]," (4) "a summary of the facts and evidence in the investigation," (5) "the statutory basis for the alleged criminal offenses," (6) "personal information regarding the subjects of the investigation," and (7) "the assistance requested and the procedures to be followed when performing said assistance."  *Id.* ¶ 12 (Page ID #286–87).

---

[2]On August 30, 2012, the FBI informed Lucaj that it located approximately 1,922 pages of potentially responsive documents and gave him thirty days to commit to paying the fees.  R. 1-3 (Aug. 30, 2012 Letter) (Page ID #13); R. 22-2 (Hardy Decl. ¶ 12) (Page ID #329).  In response, on September 18, 2012, Lucaj sent a letter to the FBI committing to the fees and requesting all 1,922 pages, R. 1-4 (Sept. 18, 2012 Letter) (Page ID #25).  However, the FBI claims that it did not receive Lucaj's responsive letter until November 6, 2012.  R. 22-2 (Hardy Decl. ¶ 14) (Page ID #330).  Because the FBI did not receive the letter within thirty days, it administratively closed Lucaj's FOIA request, which appears to have caused the lengthy delay in producing the responsive documents. *See id.*

The second request was sent to an unnamed foreign government, with which the United States does not share an MLAT. *Id.* ¶ 13 (Page ID #287). The document is a "letter request for information in the possession of a foreign government, and it asks for permission to interview various individuals regarding a national security investigation of [Lucaj] and others for possible violations of United States law." *Id.* Like the RFA to the Central Authority of Austria, the second RFA reveals certain information in addition to the request: (1) "factual information possessed by DOJ at the time of the letter request," (2) "DOJ's legal theories of the case," (3) "the history of legal or law enforcement actions previously taken against [Lucaj]," (4) "a summary of the facts and evidence in the investigation," (5) "the statutory basis for the alleged criminal offenses," (6) "personal information regarding the subjects of the investigation," (7) "the assistance requested," and (8) "the procedures to be followed when performing said assistance." *Id.*

Once it believed that it had "fully discharged its disclosure obligations in response to plaintiff's attorney's FOIA request," the FBI filed the motion for summary judgment that is the subject of this appeal. R. 17 (Def.'s Mot. Summ. J. at 1) (Page ID #85). Lucaj disagreed that the FBI discharged its obligations, particularly with respect to the aforementioned RFAs, so he opposed the FBI's motion. R. 23 (Pl.'s Resp. Def.'s Mot. Summ. J. & Cross-Mot. Partial Summ. J. at 4, 11–14) (Page ID #481, 488–91). The FBI maintained that it had fully discharged its disclosure obligations, and for the first time in its reply argued that the "common interest doctrine," which "permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims," *Hunton & Williams v. DOJ*, 590 F.3d 272, 277–78 (4th Cir. 2010), shielded the RFAs from disclosure.[3] *See* R. 24 (Def.'s Reply Br. in Support of Def.'s Mot. Summ. J. at 3–4) (Page ID #496–97). Lucaj opposed this application of the common-interest doctrine at a hearing on the summary-

---

[3]In its motion for summary judgment, the FBI appended a declaration from Gail A. Brodfuehrer, an attorney in the FOIA/Privacy Act Unit of the Office of Enforcement Operations in the DOJ Criminal Division, in which she stated, "Where the communications are neither 'inter-' nor 'intra-agency,' but are between a Government agency and a party possessing common litigation interests, courts have applied the common interest doctrine to satisfy the threshold requirement of Exemption 5." R. 17-5 (Brodfuehrer Decl. ¶ 19) (Page ID #289–90) (citing *Hunton & Williams*, 590 F.3d at 277–80; *In re Lindsey*, 158 F.3d 1263, 1282 (D.C. Cir. 1998)). However, the FBI did not make this argument in its brief in support of its motion for summary judgment. *See* R. 17 (Def.'s Br. in Support of Def.'s Mot. Summ. J.) (Page ID #81–110).

judgment motion.  *See* R. 30 (Mot. Summ. J. Hr'g Tr. at 24) (Page ID #607).  The FBI's invocation of the common-interest doctrine ultimately persuaded the district court that the requests to Austria and to the unnamed government were exempt under § 552(b)(5).  *See Lucaj v. FBI*, No. 14-12635, 2016 WL 319525, at *3–5 (E.D. Mich. Jan. 27, 2016).  Accordingly, the district court granted the FBI's motion.  *Id.* at *5.  The FBI's argument does not persuade us, however, and we explain why below.

## II.  DISCUSSION

### A.  Standard of Review

Pursuant to 5 U.S.C. § 552(a)(4)(B), a district court reviews de novo an agency's denial of a request for disclosure of agency records.  *See Rugiero v. DOJ*, 257 F.3d 534, 543 (6th Cir. 2001).  On appeal, we review de novo a district court's grant of summary judgment.  *Id.*  We affirm such an award "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### B.  Exemption 5

As a general matter, FOIA demands that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules stating the time, place, fees (if any), and procedures to be followed, shall make the records promptly available to any person."  5 U.S.C. § 552(a)(3)(A).  However, "[t]his mandate does not apply . . . to information that falls within any of nine specific exemption categories listed at 5 U.S.C. § 552(b)."  *Abraham & Rose, P.L.C. v. United States*, 138 F.3d 1075, 1078 (6th Cir. 1998).  "In keeping with the philosophy of disclosure, however, these exemptions are narrowly construed, and the government has the burden of establishing that one of them applies."  *Schell v. HHS*, 843 F.2d 933, 937 (6th Cir. 1988) (internal quotation marks omitted).

The fifth of these exemptions targets "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency, provided that the deliberative process privilege shall not apply to records created 25 years or more before the date on which the records were requested."  5 U.S.C. § 552(b)(5).

Thus, to declare memorandums or letters exempt from disclosure under this rule, the Government must make two showings:  the document's "source must be a Government agency, and it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) [hereinafter *Klamath*].

It may appear from the phrasing of the first condition that a memorandum sent from a Government agency to a nonagency would be exempt, whereas a memorandum sent from a nonagency to a Government agency would not be exempt.  However, such a reading would contradict the plain meaning of the statute.  *Inter-* means "between" or "among."  *See Inter-*, Merriam-Webster, https://www.merriam-webster.com/dictionary/inter (last visited Mar. 15, 2017); *accord Inter*, Black's Law Dictionary (10th ed. 2014).  For instance, an *inter-session recess* is "a break between formal sessions of Congress"—one session of Congress ending as the recess begins and another session of Congress beginning as the recess ends.  *See NLRB v. Noel Canning*, —— U.S. ——, 134 S. Ct. 2550, 2556 (2014).  Likewise, *inter-agency memorandums* necessarily means memorandums between agencies—one agency generating the memorandum and another agency in receipt of the memorandum.  The legislative history confirms this common-sense meaning.  The House Committee on Government Operations, to whom the soon-to-be-FOIA bill was referred, stated in its report on the bill that inter-agency and intra-agency memorandums or letters should be exempt because "a Government agency cannot always operate effectively if it is required to disclose documents or information which it has *received or generated* before it completes the process of awarding a contract or issuing an order, decision or regulation."  H.R. Rep. No. 89-1497, at 10 (1966) (emphasis added).  Therefore, we take the Supreme Court's instruction that the document's "source must be a Government agency" not to rule out the corresponding requirement that the document's destination must also be an agency.  We further hold that, consistent with this rule and in keeping with the plain meaning of the statute and legislative intent, the destination of the document must be a Government agency as well.

With these foundational concepts in mind, we turn to whether the RFAs are "intra-agency" or "inter-agency."  In the first place, and based on definitions alone, the RFAs are not

intra-agency memorandums or letters. *Intra* means "within," *see Intra-*, Merriam-Webster, https://www.merriam-webster.com/dictionary/intra (last visited Mar. 15, 2017); *accord Intra*, Black's Law Dictionary (10th ed. 2014), and the very purpose of the RFAs was to be sent without (i.e., to foreign governments). The OIA generated the requests because it wanted to obtain assistance from the Central Authority Austria and an unnamed country. *See* R. 17-5 (Brodfuehrer Decl. ¶¶ 10–13) (Page ID #286–87). And the record indicates that the RFAs were, in fact, sent to these countries. *See id.* ¶ 22 (Page ID #291). Therefore, the only question in this case is whether the RFAs are inter-agency memorandums or letters.

Key to answering this question is the Supreme Court's admonition that "the first condition of Exemption 5 is no less important than the second; the communication must be 'inter-agency or intra-agency.'" *Klamath*, 532 U.S. at 9. Indeed, the first condition here is all-important. However broad the term *agency* can be, *see* Anne Joseph O'Connell, *Bureaucracy at the Boundary*, 162 U. Pa. L. Rev. 841 (2014), FOIA offers, for our purposes, a more limited definition: "'agency' means each authority of the Government of the United States." 5 U.S.C. § 551(1), *cited in* 5 U.S.C. § 552(f)(1) (elaborating that "'agency' as defined in section 551(1) of this title includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency"). So, to be inter-agency memorandums or letters, the RFAs must have been sent from an authority of the Government of the United States to an authority of the Government of the United States. The OIA, undoubtedly an authority of the Government of the United States, sent the RFAs to the Central Authority of Austria and an unnamed country, undoubtedly not authorities of the Government of the United States. The RFAs' recipients having failed to meet FOIA's definition of *agency*, we hold that the RFAs from the OIA to the Central Authority of Austria and the unnamed country are not inter-agency. And given that the RFAs are not intra-agency either, they may not be withheld under Exemption 5.

**C. The Common Interest Doctrine, the Consultant Corollary, and the Expansion of Exemption 5**

The appellees argue that the Central Authority of Austria and the unnamed country need not be agencies because the so-called common-interest doctrine envelops them into Exemption 5.**4** This doctrine, which has been used to broaden the reach of Exemption 5 in a trilogy of Fourth Circuit cases, "permits parties whose legal interests coincide to share privileged materials with one another in order to more effectively prosecute or defend their claims." *Am. Mgmt. Servs., LLC v. Dep't of the Army*, 703 F.3d 724, 732 (4th Cir. 2013) (quoting *Hunton & Williams*, 590 F.3d at 277–78); *Hanson v. USAID*, 372 F.3d 286, 292 (4th Cir. 2004). The reasoning goes that "[b]ecause the common interest doctrine requires the agency to determine that the public interest and the litigation partner's interest have converged, communications between the agency and its partner can be understood as 'intra-agency' for purposes of Exemption 5." *Hunton & Williams*, 590 F.3d at 280.

Relatedly, some circuits have recognized a "consultant corollary" to Exemption 5, which "extends to communications between Government agencies and outside consultants hired by them" so long as there is "the expectation that communications will remain confidential" and there is "some indicia of a consultant relationship between the outsider and the agency." *See*

---

**4**The appellees also argue that Lucaj waived argument on the common-interest doctrine. We hold that he did not. First, "waiver" is likely not the word that appellees intend, as Lucaj has made no indication that he voluntarily abandoned the common-interest issue. Rather, the appellees likely mean to argue that Lucaj forfeited the common-interest doctrine. Although the terms *waiver* and *forfeiture* are often used interchangeably, "[t]he two are really not the same." *Freytag v. Commissioner*, 501 U.S. 868, 894 n.2 (1991) (Scalia, J., concurring), *cited in United States v. Olano*, 507 U.S. 725, 733 (1993). "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Olano*, 507 U.S. at 733 (internal quotation marks omitted). Thus, "[s]ome rights may be forfeited by means short of waiver, but others may not. A right that cannot be waived cannot be forfeited by other means (at least in the same proceeding), but the converse is not true." *Freytag*, 501 U.S. at 894 n.2, *cited in Olano*, 507 U.S. at 733; *cf. United States v. Soto*, 780 F.3d 689, 701 (6th Cir. 2015) (distinguishing *waiver* and *forfeiture* under Federal Rule of Criminal Procedure 12).

With this distinction in mind, we observe that Lucaj has not forfeited the common-interest issue either. The appellees first raised the issue in *their* reply brief. Lucaj's next opportunity to address the matter occurred at the hearing on the summary-judgment motion. To suggest that Lucaj forfeited an argument that he addressed as soon as he could cuts against principles of forfeiture and, frankly, fairness. Litigants preserve arguments made for the first time at a hearing if they "state the issue with sufficient clarity to give the court and opposing parties notice that it is asserting the issue" and "provide some minimal level of argumentation in support of it." *United States v. Huntington Nat'l Bank*, 574 F.3d 329, 332 (6th Cir. 2009). The common-interest doctrine was dispositive for the district court, and the appellees raised it first, so there is no question that everyone had notice. Moreover, Lucaj has provided sufficient argumentation to convince us that the common-interest doctrine does not apply here. Therefore, he has not forfeited or waived the issue.

*Nat'l Inst. of Military Justice v. DOD*, 512 F.3d 677, 682, 685–86 (D.C. Cir. 2008); *see also Gov't Land Bank v. GSA*, 671 F.2d 663, 665 (1st Cir. 1982) (observing that "[b]oth parties agree that a property appraisal, performed under contract by an independent professional, is an 'intra-agency' document for purposes of the exemption"); *Hoover v. U.S. Dep't of the Interior*, 611 F.2d 1132, 1138 (5th Cir. 1980) (holding that an appraisal report that an agency purchased from an independent nongovernment appraiser "is an intra-agency memorandum within the meaning of Exemption 5" because agencies "may have a special need for the opinions and recommendations of temporary consultants" (internal quotation marks omitted)). These cases reason, similarly to the common-interest doctrine cases, "that federal agencies occasionally will encounter problems outside their ken, and it clearly is preferable that they enlist the help of outside experts skilled at unravelling their knotty complexities." *Nat'l Inst. of Military Justice*, 512 F.3d at 682–83 (internal quotation marks omitted).

We appreciate the concern of our sister circuits and the appellees that agencies have a strong interest in confidential and frank communication with outsiders, including foreign governments. But when the Department of the Interior made the same argument in *Klamath*, the Supreme Court rejected it:

> [T]he Department's argument skips a necessary step, for it ignores the first condition of Exemption 5, that the communication be "intra-agency or inter-agency." The Department seems to be saying that "intra-agency" is a purely conclusory term, just a label to be placed on any document the Government would find it valuable to keep confidential.
>
> There is, however, no textual justification for draining the first condition of independent vitality.

*Klamath*, 532 U.S. at 12. Congress also presaged the appellees' concern "that it would be impossible to have any frank discussion of legal and policy matters in writing if all such writings were to be subjected to public scrutiny." S. Rep. No. 89-813, at 9 (1965); *see* H.R. Rep. No. 89-1497, at 10 (1966). But in the end, Congress chose to limit the exemption's reach to "inter-agency or intra-agency memorandums or letters," 5 U.S.C. § 552(b)(5), not to "memorandums or letters among agencies, independent contractors, and entities that share a common interest with agencies." In view of our responsibility to "narrowly construe[]" FOIA's exemptions, *see Schell*,

843 F.2d at 937 (quoting *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976)), our response today echoes that of the Supreme Court and Congress: however important it may be for the OIA to have frank communications with the Central Authority of Austria and an unnamed foreign government, however common the interest between the OIA and its international partners, the Central Authority of Austria and an unnamed foreign government are not, so far as Congress has defined the term, *agencies*. Therefore, the RFAs from the OIA to these countries are not "inter-agency or intra-agency memorandums or letters" within the scope of Exemption 5.

## III. CONCLUSION

This case and the policy questions it raises are not over. It may be that Exemption 3 shields the RFA to the Central Authority of Austria, as the FBI argued in its briefing below, *see* R. 24 (Reply Br. in Support of Def.'s Mot. Summ. J. at 1, 3, 6–7) (Page ID #494, 496, 499–500), or that Exemptions 6 and 7 shield both RFAs, as the DOJ has claimed, R. 17-5 (Brodfuehrer Decl. ¶¶ 8, 26–28) (Page ID #285, 293–95). More broadly, Congress may decide in due course that letters and memorandums from agencies to foreign governments are shaded from FOIA's light. *See Nat'l Inst. of Military Justice*, 512 F.3d at 695–96 (Tatel, J. dissenting). However, our role today is limited: to construe the meaning of Exemption 5. To that end, and that end alone, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.