## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

DIANNE SCOTTEN,

       Appellant,

     v.

DEPARTMENT OF VETERANS
  AFFAIRS,

       Agency.

DOCKET NUMBER
DE-1221-16-0087-W-1

DATE: August 23, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Jill Gerdrum</u>, Esquire, Missoula, Montana, for the appellant.

<u>Melissa Lynn Binte Lolotai</u>, Denver, Colorado, for the agency.

### BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

### FINAL ORDER

¶1      This case is before the Board on the agency's petition for review and the appellant's cross petition for review of the initial decision, which ordered corrective action in connection with the appellant's individual right of action (IRA) appeal. For the reasons discussed below, we GRANT the agency's petition

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

for review and DENY the appellant's cross petition for review. We MODIFY the initial decision to find that 5 U.S.C. § 2302(f)(2) and its heightened standard does not apply, to expand the analysis of the agency's clear and convincing burden regarding its decision to change the effective date of the appellant's resignation, and to clarify that the appellant's resignation is not a personnel action that may serve as the basis for a whistleblower reprisal claim. Because the agency established by clear and convincing evidence that it would have effected the appellant's resignation before her requested date even absent her protected disclosure, the appellant is not entitled to relief in connection with that personnel action. However, because the appellant remains entitled to corrective action concerning her hostile work environment claim, we GRANT her relief on that basis. We otherwise AFFIRM the initial decision.

## BACKGROUND

¶2      Effective March 9, 2014, the agency appointed the appellant to the excepted-service position of Associate Chief of the In-Patient Care Service for its Montana Healthcare System, subject to the completion of a "2 Year Probationary Period."[2]  Initial Appeal File (IAF), Tab 12 at 101, Tab 22 at 9. She was one of two Associate Chiefs reporting to the Associate Director, and six supervisory nurse managers were to report directly to the appellant, along with other nonsupervisory nurses. Hearing Compact Disc, May 23, 2016 (HCD I) (testimony of the appellant). However, the Associate Director determined that, initially, the nurse managers would report jointly to the appellant and her, and that the appellant would gradually assume primary supervision over a period of time. IAF, Tab 22 at 10. Early on, some of the nurse managers complained to the

---

[2] All matters in this appeal, including issuance of the initial decision, took place prior to enactment of the Department of Veterans Affairs Accountability and Whistleblower Protection Act of 2017. Pub. L. No. 115-41, 131 Stat. 862. Thus, that statute is not relevant to this appeal.

Associate Director about the way the appellant dealt with them, including how she conducted meetings. Hearing Compact Disc, May 24, 2016 (HCD II) (testimony of the Associate Director).

¶3      On April 25, 2014, a nurse manager asked the appellant to attend a meeting of operating room staff regarding an incident related to surgical towel counts that had occurred in connection with a procedure a few days earlier. IAF, Tab 22 at 10. Although the Associate Director and the nurse manager viewed the incident as one of miscommunication among the operating room staff that could have been handled internally, the appellant perceived it as a matter of patient safety and reported it as such to the Patient Safety Program of the Quality Management Department. HCD I (testimony of the appellant); HCD II (testimony of the Associate Director). Both the Associate Director and the nurse manager were upset with how the appellant handled the matter, believing that she acted without full knowledge of the underlying facts and circumstances and the operating room culture. HCD II (testimony of the Associate Director); IAF, Tab 23 at 32-33.

¶4      After the appellant reported the towel count incident, she perceived that the Associate Director's attitude toward her changed in that she became hostile and acted to undermine the appellant's authority by directing her not to be involved with operating room matters and not to attend daily operating room meetings. HCD I (testimony of the appellant). Additionally, the nurse managers, who reported to the appellant, met with the appellant to express their dissatisfaction with how she handled the towel count incident and her management style, and to indicate that, in the future, they would not directly report to her but instead would report directly to the Associate Director. *Id.*; IAF, Tab 23 at 110-11. In the appellant's view, over the following months, the Associate Director continued to undermine her during meetings, a behavior that did not go unnoticed by other attendees. HCD I (testimony of the appellant); HCD I (testimony of the former Respiratory Manager); Hearing Compact Disc, June 9, 2016, HCD III (testimony

of the Quality Manager). In addition, the Associate Director decided to delay the appellant's transition to supervising the operating room, in contrast to what she had earlier indicated. HCD II (testimony of the Associate Director). And, on one occasion, when the appellant was acting for the Associate Director who was out of town, and a serious incident occurred in the operating room, the Associate Director tasked a nurse manager, not the appellant, with preparing an action plan. *Id.* Subsequently, based on a realignment of duties, the appellant was removed from supervision of the four nurse managers. *Id.*

¶5 At around the same time, the Associate Director was becoming increasingly dissatisfied with the appellant's performance and, after a discussion with the head of Human Resources, she proposed that the appellant accept a reassignment to a nurse manager position in non-institutional care to which, in the Associate Director's view, the appellant might be better suited, but the appellant declined the reassignment, which would have been a demotion. *Id.*; HCD I (testimony of the appellant). The Associate Director then determined to extend the appellant's evaluation period for an additional 90 days, requiring twice-weekly meetings to address the status of her assigned tasks. HCD II (testimony of the Associate Director); IAF, Tab 22 at 56-60. The Associate Director believed that the extended evaluation period worked well, but the appellant disagreed. HCD II (testimony of the Associate Director); HCD I (testimony of the appellant).

¶6 The appellant challenged the proposed demotion, filing an informal grievance against the Associate Director and requesting mediation, claiming retaliation and a hostile work environment based on her having filed the patient safety report. IAF, Tab 22 at 11. Although the appellant subsequently withdrew her request for mediation, she filed a formal grievance alleging retaliation for making a protected disclosure. IAF, Tab 12 at 52. The Acting Director of the facility, to whom the grievance was submitted, advised the appellant that, due to the complexity of the issues, he was referring the grievance for review and investigation by an examiner. IAF, Tab 23 at 117. When told that she would

have to continue working under the Associate Director's supervision during this time, the appellant stated that she could not do so as her anxiety level was high, and that, if there were no other options, she would have to resign. HCD I (testimony of the appellant).

¶7    On December 5, 2014, the appellant submitted her resignation, effective December 27, 2014, based on the suggestion of the head of Human Resources that she take leave until her last day, in accordance with his reading of a provision of the agency Handbook. IAF, Tab 13 at 8, Tab 23 at 123; HCD I (testimony of the appellant). However, the agency determined that the head of Human Resources lacked the authority to grant the appellant leave and made the appellant's resignation effective December 5, 2014. HCD III (testimony of the Human Resources Specialist); IAF, Tab 12 at 45. At that time, the appellant had a pending offer of employment with the state of Montana, which she accepted. HCD I (testimony of the appellant).

¶8    On January 21, 2015, the appellant filed a complaint with the Office of Special Counsel (OSC) in which she alleged that, in retaliation for disclosing the towel count incident to the Patient Safety Program, she experienced a significant change in duties, was threatened with demotion, and was subjected to a hostile work environment such that she felt compelled to resign. IAF, Tab 1 at 31-44. When OSC closed its inquiry into her allegations, *id.* at 47, the appellant filed an IRA appeal with the Board, *id*. at 1-12, and requested a hearing, *id.* at 2. Upon review of the parties' initial submissions, IAF, Tabs 6-7, 10, 13, 16, the administrative judge determined that the appellant had established Board jurisdiction over her IRA appeal in that she exhausted her remedies before OSC, that, as to the towel count incident, she nonfrivolously alleged what she reasonably believed was a substantial and specific danger to public health and safety, and that she nonfrivolously alleged that her protected disclosure was a contributing factor in the imposition of two covered personnel actions, a hostile

work environment and an involuntary resignation. IAF, Tab 17. Accordingly, the administrative judge convened the requested hearing. IAF, Tabs 37-38, 44.

¶9 Thereafter, the administrative judge issued an initial decision in which he found that the appellant proved that she made a protected disclosure, even though it was made in the normal course of her duties, because she satisfied her burden under 5 U.S.C. § 2302(f)(2) by proving that the agency subjected her to a hostile work environment in reprisal for her disclosure. IAF, Tab 45, Initial Decision (ID) at 18 & n.7, 20-23. The administrative judge also found that the hostile work environment the appellant experienced constituted a significant change in duties, responsibilities, or working conditions, a personnel action under 5 U.S.C. § 2302(a)(2)(A)(xii), and that she was subjected to that hostile work environment because of her protected disclosure.[3] ID at 20-23. The administrative judge then found that the agency did not establish by clear and convincing evidence that it would have subjected the appellant to certain of the changed working conditions absent her protected disclosure. ID at 23-28. The administrative judge found that the appellant did not establish that her resignation was involuntary in that the hostile work environment to which she was subjected did not amount to a constructive removal. ID at 28-30. Nevertheless, the administrative judge found

---

[3] The administrative judge relied on the Board's decision in *Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶ 23 (2015), *overruled on other grounds by Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 25, in finding that a hostile work environment may constitute a covered personnel action under the whistleblower protection statutes. ID at 20. The Board has clarified that allegations of a hostile work environment may establish a personnel action only if they meet the statutory criteria, i.e., constitute a significant change in duties, responsibilities, or working conditions as set forth in 5 U.S.C. § 2302(a)(2)(A). *Skarada v. Department of Veterans Affairs*, 2022 MSPB 17, ¶ 16. The administrative judge found that the appellant established that she was not allowed to manage her staff and was removed from supervision, barred from operating room department meetings, pulled from oversight responsibilities, undermined, yelled at in front of her subordinates, and subjected to overt hostility by the Associate Director. ID at 20-23. We agree with the administrative judge that the cumulative effect of these actions constituted a significant change in the appellant's working conditions. *See Skarada*, 2022 MSPB 17, ¶ 18.

that the appellant's otherwise voluntary resignation was rendered involuntary when the agency unilaterally defined its terms, i.e., its effective date, without her consent, even though the agency did not do so in retaliation for her protected whistleblowing, because her resignation was inextricably tied to the hostile work environment. ID at 31. Thus, the administrative judge granted the appellant's request for corrective action, ID at 2, 32-34, recognizing, however, that, because she no longer worked for the agency and had relocated, it was unclear whether the appellant wished to return to her former position with the agency, ID at 33. Accordingly, the administrative judge directed the appellant to make known to the agency her desire in that regard.[4] ID at 33.

¶10     The agency has filed a petition for review. Petition for Review (PFR) File, Tab 1. The appellant has responded to the petition for review and has filed a cross petition for review. PFR File, Tab 3. The agency has replied to that submission. PFR File, Tab 5.

## ANALYSIS

¶11     For organizational purposes, we find it appropriate to start our analysis by addressing the arguments—raised by the appellant in her cross petition for review—that the administrative judge erred by finding that the appellant's disclosure was made in the normal course of her duties and, therefore, that the higher evidentiary standard set forth in 5 U.S.C. § 2302(f)(2) was applicable. PFR File, Tab 3 at 30; ID at 20. We then address whether the appellant established that her protected disclosure was a contributing factor in the hostile work environment and whether the agency proved by clear and convincing evidence that it would have subjected the appellant to the same hostile work environment absent her protected disclosure. Turning to the agency's petition for

---

[4] The administrative judge determined not to award interim relief in this case. ID at 34. Neither party has challenged that determination on review.

review, we address the agency's argument that the administrative judge erred in finding that the appellant's disclosure was a contributing factor in the appellant's involuntary resignation. PFR File, Tab 1 at 7-11; ID at 28-31. Lastly, we turn back to the appellant's cross petition for review to address her argument that the administrative judge erred in finding that, apart from the agency's change to its effective date, her resignation was voluntary and did not amount to a constructive removal. PFR File, Tab 3 at 23-29; ID at 29-30.

The appellant was not required to meet the higher burden of proof under 5 U.S.C. § 2302(f)(2) to show that her disclosure was protected, and she established that she made a protected disclosure under 5 U.S.C. § 2302(b)(8).

¶12    Under the Whistleblower Protection Enhancement Act of 2012 (WPEA), Pub L. No. 112-199, 126 Stat. 1465, the Board has jurisdiction over an IRA appeal if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations that (1) she made a protected disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a). *Bishop v. Department of Agriculture*, 2022 MSPB 28, ¶ 13; *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see* 5 U.S.C. §§ 1214(a)(3), 1221(e)(1); *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001). Once an appellant establishes jurisdiction over her IRA appeal, she is entitled to a hearing on the merits of her claim, which she must prove by preponderant evidence. *Salerno*, 123 M.S.P.R. 230, ¶ 5. If the appellant proves that her protected disclosure or activity was a contributing factor in a personnel action taken against her, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 6; *Salerno*, 123 M.S.P.R. 230, ¶ 5; *see* 5 U.S.C. § 1221(e)(1)-(2).

¶13 Prior to the enactment of the WPEA in 2012, disclosures made in the normal course of an employee's duties were not protected. *See, e.g.*, *Huffman v. Office of Personnel Management*, 263 F.3d 1341, 1353-54 (Fed. Cir. 2001), *superseded by statute*, WPEA, Pub. L. No. 112-199, § 101(b)(2)(C), 126 Stat. 1465, 1465-66. However, under a provision of the WPEA codified as 5 U.S.C. § 2302(f)(2), such disclosures are protected if the appellant shows that the agency "took, failed to take, or threatened to take or fail to take a personnel action . . . in reprisal for the disclosure." *Benton-Flores v. Department of Defense*, 121 M.S.P.R. 428, ¶ 15 (2014). This provision imposed an "extra proof requirement" for these types of disclosures such that an appellant to whom 5 U.S.C. § 2302(f)(2) applies must prove by preponderant evidence that the agency took a personnel action because of the disclosure and did so with an improper, retaliatory motive.[5] *Salazar v. Department of Veterans Affairs*, 2022 MSPB 42, ¶ 11.

¶14 In *Day v. Department of Homeland Security*, 119 M.S.P.R. 589, ¶ 18 (2013), the Board observed that the Whistleblower Protection Act (WPA) definition of disclosure contained in 5 U.S.C. § 2302(b)(8) was ambiguous as to whether disclosures made in the normal course of an employee's duties were protected. It found that the new provision at 5 U.S.C. § 2302(f)(2) enacted as part of the WPEA clarified this ambiguity to provide that these types of disclosures were covered under the WPA. *Day*, 119 M.S.P.R. 589, ¶¶ 18-26; *see Salazar*, 2022 MSPB 42, ¶ 12. The version of 5 U.S.C. § 2302(f)(2) enacted as part of the WPEA was the version in place when the events in this case occurred

---

[5] As in this appeal, the determination of whether a disclosure made in the normal course of duties is protected will often require factual findings best made after a more complete development of the record. Accordingly, the determination should be made as part of an appellant's prima facie case and not at the jurisdictional stage of an IRA appeal.

and when the administrative judge issued his September 2016 initial decision. *See Salazar*, 2022 MSPB 42, ¶ 12.

¶15     The National Defense Authorization Act for Fiscal Year 2018 (2018 NDAA), signed into law on December 12, 2017, amended 5 U.S.C. § 2302(f)(2) to provide that disclosures "made during the normal course of duties of an employee, the principal job function of whom is to regularly investigate and disclose wrongdoing," are protected if the employee demonstrates that the agency "took, failed to take, or threatened to take or fail to take a personnel action" with respect to that employee in reprisal for the disclosure.  Pub. L. No. 115-91, § 1097(c)(1)(B)(ii), 131 Stat. 1283, 1618.  As we held in *Salazar*, 2022 MSPB 42, ¶¶ 13-14, 22, the effect of this amendment is that 5 U.S.C. § 2302(f)(2) now expressly applies only to an employee whose principal job function is to regularly investigate and disclose wrongdoing, and that disclosures made in the normal course of duties of an employee whose principal job function is not to regularly investigate and disclose wrongdoing fall under the generally applicable 5 U.S.C. § 2302(b)(8), rather than 5 U.S.C. § 2302(f)(2).  Further, as we also held in *Salazar*, 2022 MSPB 42, ¶¶ 15-21, the 2018 NDAA's amendment to 5 U.S.C. § 2302(f)(2), which clarified the prior version of that statute enacted in the WPEA, applies retroactively to appeals pending at the time the statute was enacted.

¶16     In requiring the appellant to meet the additional evidentiary burden of showing that the personnel actions taken were in retaliation for her April 25, 2014 report to the Patient Safety Program regarding the towel count incident, the administrative judge found that the disclosure, otherwise protected under section 2302(b)(8) as a substantial and specific danger to public health, was made in the normal course of the appellant's duties as an Associate Chief of Nursing Services.  ID at 20.  The administrative judge found that it was a job requirement that the appellant report such incidents that could impact patient safety.  *Id.*  The appellant challenges this finding on review based on testimony by the Associate

Director that the appellant should have addressed the matter internally instead of going to the Patient Safety Program. PFR File, Tab 3 at 30; *see* HCD II (testimony of the Associate Director); ID at 20.

¶17 The appellant, a high-ranking supervisory nurse, viewed her disclosure of the incident relating to the towel count as a "near miss" situation in which a patient could have been put in jeopardy by the actions of careless staff. HT I (testimony of the appellant); IAF, Tab 23 at 95. Regardless of whether there were other means to address the issue that her coworkers and supervisor would have preferred that she used, her act of reporting to the Patient Safety Program a matter that, in her professional view, could have jeopardized patient safety must reasonably be considered as within the normal course of her duties. The appellant's duties included providing guidance and direction oversight for the development, implementation, and maintenance of established standards of nursing practice. IAF, Tab 12 at 35. We therefore agree with the administrative judge's finding that the appellant made her disclosure in the normal course of her duties.

¶18 However, due to the 2018 NDAA's clarifying amendment to 5 U.S.C. § 2302(f)(2) and our decision in *Salazar*, of which the administrative judge did not have the benefit, we find that the appellant was not required to meet the higher burden of proof that the personnel action was taken in reprisal for her disclosure of the towel count incident to prove that her disclosure was protected under 5 U.S.C. § 2302(b)(8). As *Salazar*, 2022 MSPB 42, ¶¶ 11, 13-14, made clear, the "extra proof" requirement in 5 U.S.C. § 2302(f)(2) only applies to an employee whose principal job function is to regularly investigate and disclose wrongdoing. The appellant's position description establishes that her principal job function was to manage patient care and nursing services at an agency health care system—as it included duties such as supervising patient care programs and managing nursing personnel and resources—and was not to regularly investigate and disclose wrongdoing. IAF, Tab 12 at 35-42. Therefore, the appellant's

disclosures fall under the generally applicable 5 U.S.C. § 2302(b)(8), rather than 5 U.S.C. § 2302(f)(2). Because we agree with the administrative judge that the appellant's April 25, 2014 report to the Patient Safety and Risk Management Department at her hospital of unaccounted for surgical towels which might have been left inside a patient was a disclosure which the appellant reasonably believed evidenced a substantial and specific danger to public health or safety, ID at 20, her disclosure was protected under 5 U.S.C. § 2302(b)(8)(A)(ii).

The appellant established that her protected disclosure was a contributing factor in the hostile work environment personnel action.

¶19    Having proved that her disclosure was protected under 5 U.S.C. § 2302(b)(8), the appellant was required to prove that her protected disclosure was a contributing factor in the agency subjecting her to a hostile work environment. *Soto*, 2022 MSPB 6, ¶ 6; *Scoggins v. Department of the Army*, 123 M.S.P.R. 592, ¶ 21 (2016). The most common way for an appellant to prove that a protected disclosure was a contributing factor in the agency's taking of a personnel action is the knowledge/timing test. *Smith v. Department of the Army*, 2022 MSPB 4, ¶ 19; *Scoggins*, 123 M.S.P.R. 592, ¶ 21. That test requires the appellant to prove that the official taking the personnel action knew of the whistleblowing disclosure and took the personnel action within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Soto*, 2022 MSPB 6, ¶ 6; *Scoggins*, 123 M.S.P.R. 592, ¶ 21. The Board has held that a personnel action taken within 1 to 2 years of the protected disclosures satisfies the timing prong of the knowledge/timing test. *Pridgen v. Office of Management and Budget*, 2022 MSPB 31, ¶ 63. Once the appellant has satisfied the knowledge/timing test, she has demonstrated that a protected disclosure was a contributing factor in a personnel action, even if a complete analysis of all of the evidence would not support such a finding. *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 20 (2008).

¶20    Here, without the benefit of the Board's decisions in *Skarada* and *Salazar*, the administrative judge found that the appellant proved by preponderant evidence that she was subjected to a hostile work environment in reprisal for her protected disclosure. ID at 20-23. That finding was based in part on the appellant having satisfied the knowledge/timing test; that is, she established that the Associate Director learned of her disclosure regarding the towel count incident when the appellant told her that she had reported it to the Patient Safety Program and that, almost immediately thereafter, the Associate Director's attitude toward her changed and became hostile. ID at 21-22. The administrative judge also found that the Associate Director's open hostility toward the appellant was observed by others and that, a week after the disclosure, the Associate Director undermined the appellant by taking the side of the nurse managers in their dispute with the appellant regarding her management style. ID at 20-22. In addition, the administrative judge found that the timing of the appellant's sudden exclusion from any supervisory responsibilities in the operating room after making her disclosure about the operating room incident was strong evidence that she was removed from operating room supervision as a consequence of making that disclosure. ID at 22. In so finding, the administrative judge found incredible the Associate Director's denial that that was the reason the appellant was removed from supervisory duties relating to the operating room because the Associate Director had provided inconsistent and inherently implausible explanations for her actions. *Id.*; *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987).[6]

---

[6] In *Hillen,* the Board held that, to resolve credibility issues, an administrative judge must identify the factual questions in dispute, summarize the evidence on each disputed question, state which version he believes, and explain in detail why he found the chosen version more credible, considering such factors as: (1) the witness's opportunity and capacity to observe the event or act in question; (2) the witness's character; (3) any prior inconsistent statement by the witness; (4) a witness's bias, or lack of bias; (5) the contradiction of the witness's version of events by other evidence or its consistency

¶21     The agency does not, in its petition for review, point to any countervailing evidence on this issue, and does not challenge the administrative judge's finding that the appellant proved by preponderant evidence that her protected disclosure was a contributing factor in the creation of a hostile work environment. PFR File, Tab 1 at 7-11. After careful review of the record, we discern no reason to disturb the administrative judge's findings in this regard. *Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (finding that the Board will not disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

The agency failed to prove by clear and convincing evidence that it would have subjected the appellant to the same hostile work environment absent her protected disclosure.

¶22     Because the appellant established a prima facie case that the Associate Director retaliated against her for making a protected disclosure regarding the towel count incident by subjecting her to a number of actions that collectively amounted to a hostile work environment, the burden now shifts to the agency to show by clear and convincing evidence that it would have subjected the appellant to that same environment absent any whistleblowing. *Soto*, 2022 MSPB 6, ¶ 6; *Salerno*, 123 M.S.P.R. 230, ¶ 5. In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar

with other evidence; (6) the inherent improbability of the witness's version of events; and (7) the witness's demeanor. 35 M.S.P.R. at 458.

actions against employees who are not whistleblowers but who are otherwise similarly situated.  *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999); *see Marcato v. Agency for International Development,* 11 F.4th 781, 783-84, 786-90 (D.C. Cir. 2021) (adopting and applying the *Carr* factors to a clear and convincing analysis); *Duggan v. Department of Defense*, 883 F.3d 842, 846-47 (9th Cir. 2018) (same); *Soto*, 2022 MSPB 6, ¶ 11.  The Board considers all the evidence, including evidence that detracts from the conclusion that the agency met its burden.  *Soto*, 2022 MSPB 6, ¶ 11; *see Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012).

¶23     In finding that the agency failed to meet its burden, the administrative judge considered its claim that the difficulties the appellant had with her subordinates were due to a lack of trust that she created by how she talked with them and how she conducted meetings.  ID at 24.  The administrative judge found, however, that such concerns did not plausibly justify the demeaning manner in which the Associate Director treated the appellant and the removal of her supervisory responsibilities.  *Id*.  Therefore, as to the first *Carr* factor, the administrative judge concluded that the stated reasons for the agency's actions were weak and he was not persuaded that such a disproportionate response would have occurred in the absence of a retaliatory motive.  *Id.*

¶24     Regarding the second *Carr* factor, the administrative judge found that there was persuasive evidence of a motive to retaliate on the part of officials involved in certain of the actions taken by the agency that created a hostile work environment for the appellant.[7]  ID at 24-27.  Besides the Associate Director's

---

[7] The administrative judge did, however, credit the Associate Director's testimony that, by late summer and fall of 2014, she did not believe that the appellant was meeting expectations in certain nonsupervisory performance areas and so took actions to address these perceived performance deficiencies, including proposing that the appellant accept a voluntary demotion, delaying her performance appraisal when she declined the demotion, and requesting that the meetings the appellant held with her staff be documented.   The administrative judge therefore credited as specific and

treatment of the appellant following her disclosure, the administrative judge found, based on the testimony of a number of facility employees, that the Associate Director had a tendency to retaliate against employees who reported safety issues outside of the department and that she engendered a degree of fear among them. *Id.* Even if the Associate Director was not directly implicated by the appellant's disclosure, the criticism reflected on her—in her capacity as the Associate Director overseeing the nursing operations—can be sufficient to establish a retaliatory motive. *Whitmore*, 680 F.3d at 1370-71 (finding that the appellant's criticisms "cast [the agency], and, by implication all of the responsible [agency] officials, in a highly critical light by calling into question the propriety and honesty of their official conduct"); *Wilson v. Department of Veterans Affairs*, 2022 MSPB 7, ¶ 65 (stating that an appellant's criticism that reflects on an agency official in her capacity as a manager is sufficient to establish a substantial retaliatory motive).

¶25     Regarding the third *Carr* factor, the administrative judge found that there was credible evidence that the Associate Director took similar actions against employees who were not whistleblowers. ID at 27-28. According to the administrative judge, the record showed that the Associate Director generally was abrasive toward those who did not, in her view, meet her high standards, and that she could be vindictive. *Id.* Nevertheless, the administrative judge found that he lacked a firm conviction that the hostile treatment of the appellant was caused by the Associate Director's high standards, given the suspicious timing and direct

---

straightforward the Associate Director's testimony that she took these actions to address the appellant's deficiencies, not to retaliate against her for her protected disclosure. ID at 24-25. In this regard, the administrative judge relied on Board case law that finding a witness incredible on one matter does not preclude finding her credible on another matter. *Craft v. Department of Veterans Affairs*, 78 M.S.P.R. 374, 380 (1988); ID at 25. Accordingly, the administrative judge determined that the harassing conditions for which the appellant was due relief did not include the actions taken by the Associate Director to address what she perceived to be legitimate performance concerns. ID at 25.

evidence that she and others, including nurse managers, were upset with the appellant for making the disclosure regarding the towel count incident. ID at 28.

¶26 After considering the totality of the evidence, the administrative judge found that the agency did not meet its burden of proving by the very high standard of clear and convincing evidence that it would have subjected the appellant to a hostile work environment absent her protected disclosure. *Id*. The agency does not challenge this finding on review, PFR File, Tab 1, and we discern no basis upon which to disturb it. We therefore agree with the administrative judge that, as to this personnel action, the appellant established her claim of retaliation for whistleblowing.

The appellant established that her disclosure was a contributing factor in the agency changing the effective date of her resignation.

¶27 As noted, the administrative judge found that the appellant established that her resignation was involuntary. ID at 28-30. He found that she did not show that the hostile work environment to which she was subjected would have compelled a reasonable person to leave the workplace, even though the situation was difficult and caused her a high level of discomfort and anxiety and concern for her professional reputation. *Id.* However, he found that the resignation was rendered involuntary because the agency unilaterally made it effective prior to the date the appellant had selected to resign. ID at 31.

¶28 The administrative judge then specifically found that the evidence did not show that the agency processed the appellant's resignation on a date she did not agree to in reprisal for her protected disclosure. *Id.* He found that, while the Human Resources Specialist discussed the effective date with the Associate Director, there was no evidence that the Associate Director took issue with the appellant's use of leave in advance of her resignation because of the appellant's protected disclosure. *Id.* Rather, the administrative judge found, based on the Associate Director's testimony, that she took issue with the head of Human Resources possibly usurping her authority to grant or deny leave for her staff and

that she would have wanted the appellant to return to work so that there could be an appropriate transition of responsibilities. *Id.* The administrative judge similarly found no retaliatory intent on the Human Resources Specialist's part in unilaterally changing the date of the appellant's resignation. *Id.*

¶29 The agency challenges on review the administrative judge's ultimate finding regarding the appellant's alleged involuntary resignation. PFR File, Tab 1 at 7-11. Specifically, the agency argues that, having found a lack of retaliatory motive for changing the appellant's resignation date, the administrative judge was required to further find that the appellant failed to establish that her disclosure was a contributing factor in her involuntary resignation, and that the administrative judge abused his discretion in finding that the appellant met her burden by showing only that her resignation was "inextricably tied" to the hostile work environment she suffered. *Id*. at 10-11; ID at 31.

¶30 We disagree with the agency's claim that the administrative judge was required to find that the appellant failed to establish that her disclosure was a contributing factor in the agency's change to her resignation date. The appellant claims that the Associate Director and the Human Resources Specialist were the agency officials responsible for unilaterally effecting her resignation in advance of the date she had selected—the action the administrative judge found rendered her otherwise voluntary resignation involuntary. PFR File, Tab 3 at 20; ID at 31. Even though there is no evidence that the Human Resources Specialist was aware of the appellant's disclosure, the Associate Director learned of the appellant's disclosure very shortly after the appellant made it on April 25, 2014, ID at 21-22, and the effective date of the appellant's resignation was changed from December 27 to December 5, 2014, within approximately 7 months of the protected disclosure, ID at 17. Because the Board has held that personnel actions taken within 1 to 2 years of a protected disclosure or activity satisfy the timing prong of the knowledge/timing test, *Pridgen*, 2022 MSPB 31, ¶ 63, the appellant

satisfied the knowledge/timing test based on the Associate Director's knowledge and the proximity in time between the protected disclosure and the personnel action. Therefore, the appellant established contributing factor regarding this claim.

The agency proved by clear and convincing evidence that it would have changed the effective date of the appellant's resignation absent her protected disclosure.

¶31    After a careful review of the record, we find that the agency carried its burden of showing by clear and convincing evidence that it would have taken the same action in the absence of the appellant's disclosure. Regarding the first of the *Carr* factors set forth above, there is strong evidence supporting the agency's reason for changing the effective date of the appellant's resignation, specifically, VA Handbook 5011/18, part III, chapter 3, which provides that "[t]here is no authority to grant annual leave immediately prior to separation when it is known in advance that the employee is to be separated, except 'where exigencies of the service require such action (34 Comp. Gen. 61).'" IAF, Tab 12 at 108. The Comptroller General decision cited in the agency's handbook supports the proposition that annual leave should generally not be granted to an employee immediately prior to the employee's separation from the agency. *Acting Comptroller General Weitzel to Louis F. Thompson, Department of State*, 34 Comp. Gen 61 (1954). Thus, because the agency was acting consistently with established agency policy and a Comptroller General decision, we find that the first *Carr* factor strongly supports the agency.

¶32    Regarding the second *Carr* factor, the appellant's disclosure clearly was not directed at the Human Resources Specialist, and although the Associate Director was not directly implicated by the disclosure, it arguably reflected on her in her capacity as Associate Director, which could be sufficient to establish a retaliatory motive. *Whitmore*, 680 F.3d at 1370-71; *Wilson*, 2022 MSPB 7, ¶ 65. However, any such inference is outweighed by the administrative judge's specific findings, made after hearing the testimony, that there was no retaliatory intent on the part

of either the Associate Director or the Human Resources Specialist in changing the effective date of the appellant's resignation. ID at 31. The Board must defer to an administrative judge's credibility determinations when they are based, explicitly or implicitly, on observing the demeanor of witnesses testifying at a hearing; the Board may overturn such determinations only when it has "sufficiently sound" reasons for doing so. *Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). The appellant has not presented such sufficiently sound reasons here and thus we defer to the administrative judge's credibility finding. Thus, we find that the second *Carr* factor also weighs in the agency's favor.

¶33    Finally, regarding the third *Carr* factor, the agency presented no evidence that it took similar personnel actions against similarly situated employees who had not made disclosures. While the agency does not have an affirmative burden to produce evidence concerning each and every *Carr* factor, "the absence of any evidence relating to *Carr* factor three can effectively remove that factor from the analysis," but the failure to produce such evidence if it exists "may be at the agency's peril," and "may well cause the agency to fail to prove its case overall." *Whitmore*, 680 F.3d at 1374-75; *Soto*, 2022 MSPB 6, ¶ 18. Moreover, because it is the agency's burden of proof, when the agency fails to introduce relevant comparator evidence, the third *Carr* factor cannot weigh in favor of the agency. *Smith v. General Services Administration*, 930 F.3d 1359, 1367 (Fed. Cir. 2019); *Siler v. Environmental Protection Agency*, 908 F.3d 1291, 1299 (Fed. Cir. 2018); *Soto*, 2022 MSPB 6, ¶ 18. Here, based on the lack of evidence regarding how other employees were treated and the lack of evidence that no comparators exist, we find that the third *Carr* factor cuts slightly in favor of the appellant.

¶34    Considering the totality of the evidence, we find that the agency proved by clear and convincing evidence that it would have taken the same action absent the appellant's disclosure. In particular, we note the strength of the agency's reasons for changing the effective date of the appellant's resignation. Even in the absence

of the administrative judge's credibility finding of a lack of retaliatory intent, the second *Carr* factor, which would then slightly favor the appellant, and the third *Carr* factor would be insufficient to outweigh the first factor. Thus, in sum, the appellant is not entitled to corrective action under the whistleblower protection statutes regarding the agency changing the effective date of her resignation.

Other than the period during which the agency unilaterally changed the effective date of the appellant's resignation, the resignation was voluntary and thus did not constitute a personnel action under the whistleblower protection statutes.

¶35    Finally, we address the appellant's argument in her cross petition for review that the administrative judge erred in finding that, apart from the 22-day period that the agency unilaterally changed the effective date of her resignation, the appellant's resignation was voluntary. PFR File, Tab 3 at 23-29; ID at 28-30. As discussed below, we are not persuaded by the appellant's argument.

¶36    To establish the Board's jurisdiction over a claim of reprisal for whistleblowing, the appellant must establish, *inter alia*, that she was subjected to a "personnel action" under 5 U.S.C. § 2302(a)(2)(A). *Jay v. Department of the Navy*, 90 M.S.P.R. 635, ¶ 12 (2001), *aff'd*, 51 F. App'x 4 (Fed. Cir. 2002). A voluntary action does not constitute a "personnel action" under 5 U.S.C. § 2302(a)(2)(A). *Id.* However, the Board does have jurisdiction over an IRA appeal by an employee whose retirement or resignation was involuntary. *Mintzmyer v. Department of the Interior*, 84 F.3d 419, 423 (Fed. Cir. 1996); *Lawley v. Department of the Treasury*, 84 M.S.P.R. 253, ¶ 8 (1999). The legal standard for establishing an involuntary retirement or resignation, i.e., a constructive removal, is the same in an IRA appeal as in the case of an otherwise appealable action. *Jay*, 90 M.S.P.R. 635, ¶ 13.

¶37    A decision to resign or retire is presumed to be voluntary. *Shoaf v. Department of Agriculture*, 260 F.3d 1336, 1340 (Fed. Cir. 2001). The Board has held that one way an employee can overcome the presumption of voluntariness of a retirement or resignation is to show that her working conditions were so

difficult that a reasonable person in the employee's position would have felt compelled to resign or retire. *Searcy v. Department of Commerce*, 114 M.S.P.R. 281, ¶ 12 (2010); *Ragland v. Department of the Army*, 84 M.S.P.R. 58, ¶ 9 (1999). Dissatisfaction with work assignments, feeling unfairly criticized, or difficult or unpleasant working conditions are generally not so intolerable as to compel a reasonable person to resign. *Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 32 (2000). The Board evaluates the voluntariness of a resignation or retirement based on whether the totality of the circumstances supports the conclusion that the employee was effectively deprived of free choice in the matter. *Heining v. General Services Administration*, 68 M.S.P.R. 513, 519-20 (1995).

¶38    The administrative judge based his conclusion that the appellant's decision to resign was voluntary, despite the difficult conditions she worked under, on findings that: (1) the appellant was not under threat of removal or other adverse action at the time of her resignation; (2) the appellant offered a 1-month notice with her resignation as a professional courtesy, which a person who was compelled to resign could not have extended; (3) the Associate Director had valid performance concerns that justified certain of her actions, including her offer to the appellant of an opportunity to accept a voluntary demotion and her increased monitoring of the appellant's performance; and (4) the appellant withdrew her grievance related to the Associate Director's retaliation for her disclosure. ID at 29-30. The appellant challenges each of these findings in her cross petition for review, specifically arguing that she subjectively believed she was going to be demoted or fired, that she did not agree to continue to work under the Associate Director despite her 1-month notice, that the Associate Director's performance concerns were not legitimate but pretext for whistleblower reprisal, and that she did not in fact withdraw her grievance. PFR File, Tab 3 at 25-29.

¶39     We agree that the appellant failed to establish that her decision to resign was involuntary and note reasons in addition to those relied upon by the administrative judge. The appellant testified at the hearing that, at the time she

filed her formal grievance alleging whistleblower reprisal on November 21, 2014, she "wanted to work it out" and had no intention of leaving the agency. HCD I (testimony of the appellant). The appellant discussed her purchase of a condominium close to her workplace and plans to retire with her husband in the area as reasons for wanting to stay with the agency. *Id.* The appellant also testified that she was contacted by the state of Montana about a position at the end of October 2014, and told her point of contact there when she was offered the position on November 28, 2014, that she needed until December 5 to "make up [her] mind." *Id.* She testified that she wanted to give the agency the opportunity to respond to her grievance, believed that the agency would do so by December 5, 2014, and did not intend to make up her mind before that point. *Id.* Then, during a meeting on December 4, 2014, the Acting Director told the appellant that an outside investigator would be appointed to investigate her grievance and that he did not know when the investigation would be completed.[8] *Id.* The appellant stated that she was told she would need to return to work under the Associate Director in the meantime, at which point she informed the Acting Director and head of Human Resources that she would resign. *Id.* The appellant also testified that she was afraid that the Associate Director intended to fire her because of the hostile work environment and because the Associate Director had begun taking notes of their meetings in November 2014, and that she was concerned that if she was fired, she would not be able to obtain another job in nursing administration or management in Montana. *Id.*

¶40    On balance, the totality of the circumstances supports the administrative judge's conclusion that the appellant's decision to resign was indeed voluntary. Even considering the hostile work environment to which the agency subjected her, the appellant's testimony that she "wanted to work it out," had no intention

_____

[8] The appointment of an outside investigator suggests to us that the agency took the appellant's allegations seriously.

of resigning when she filed her formal grievance on November 21, 2014, and that she did not make up her mind to resign until December 4—by which point she had received the offer of a position with the state of Montana, *id.*—strongly indicates that her decision to resign was based on a rational calculation of the benefits and drawbacks of alternative courses of action, i.e., was a product not of coercion but of choice. That the appellant's decision to resign also stemmed from her concerns about her diminished reemployment prospects if she was in fact removed further supports this conclusion.

¶41    Finally, it is evident from the appellant's testimony that the immediate cause of her fear of being removed was the Associate Director's documentation of their meetings beginning in November 2014, which the administrative judge found, based on his assessment of the Associate Director's credibility during the hearing, was a response to the appellant's credible performance issues and did not constitute whistleblower reprisal. ID at 24-25. Even if the Associate Director's notetaking at meetings with the appellant made continuation in the job so subjectively unpleasant for the appellant that she felt she had no realistic option but to leave, it was a measure which we agree the Associate Director was authorized to adopt and is therefore not a valid basis upon which the appellant could prevail on a constructive discharge claim.[9] *See Staats v. U.S. Postal Service*, 99 F.3d 1120, 1124 (Fed. Cir. 1996).

¶42    The appellant therefore failed to establish that her decision to resign was involuntary. Consequently, unlike the agency's denial of the appellant's request for annual leave prior to her resignation, which was the basis for its change to her resignation date and constituted a personnel action under 5 U.S.C. § 2302(a)(2)(A)(ix) as "a decision concerning . . . benefits," *Marren v. Department of Justice*, 50 M.S.P.R. 369, 373 (1991), her separation pursuant to

---

[9] It is not uncommon for supervisors and managers to take notes during a meeting with an employee and we fail to see how doing so is improper.

her voluntary decision to resign—apart from the agency's denial of her request for terminal leave—did not constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A), and the Board lacks jurisdiction over her distinct claim that her involuntary resignation based on intolerable working conditions constituted whistleblower reprisal. *See Comito v. Department of the Army*, 90 M.S.P.R. 58, ¶ 13 (2001) (finding that the Board lacked jurisdiction over an appellant's allegation that an agency coerced her resignation in retaliation for protected disclosures because she failed to establish that she was forced to resign because of intolerable working conditions); *Shelly v. Department of the Treasury*, 75 M.S.P.R. 411, 413-14 (1997) (finding that a separation pursuant to a voluntary resignation is not a personnel action and that because an appellant did not show that his resignation was involuntary, his IRA appeal was not within the Board's jurisdiction).

## ORDER

¶43    Because the appellant is no longer employed by the agency, no meaningful corrective action can be ordered regarding the finding that the agency committed a prohibited personnel practice when it created a hostile work environment by significantly changing her duties, responsibilities, and working conditions in reprisal for her protected disclosure.[10]

### NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST ATTORNEY FEES AND COSTS

You may be entitled to be paid by the agency for your reasonable attorney fees and costs.  To be paid, you must meet the requirements set forth at title 5 of

---

[10]    Nonetheless, as further described below, the appellant may be entitled to consequential and compensatory damages as well as attorney fees.  If the appellant decides to file motions to that effect, separate addendum proceedings may be commenced to adjudicate such requests. *See* 5 C.F.R. § 1201.204(d)(1)-(e)(1).

the United States Code (5 U.S.C.), sections 7701(g), 1221(g), or 1214(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1202.202, and 1201.203. If you believe you meet these requirements, you must file a motion for attorney fees and costs WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion for attorney fees and costs with the office that issued the initial decision on your appeal.

## NOTICE TO THE APPELLANT REGARDING YOUR RIGHT TO REQUEST CONSEQUENTIAL AND/OR COMPENSATORY DAMAGES

You may be entitled to be paid by the agency for your consequential damages, including medical costs incurred, travel expenses, and any other reasonable and foreseeable consequential damages. To be paid, you must meet the requirements set out at 5 U.S.C. §§ 1214(g) or 1221(g). The regulations may be found at 5 C.F.R. §§ 1201.201, 1201.202 and 1201.204.

In addition, the Whistleblower Protection Enhancement Act of 2012 authorized the award of compensatory damages including interest, reasonable expert witness fees, and costs, 5 U.S.C. §§ 1214(g)(2), 1221(g)(1)(A)(ii), which you may be entitled to receive.

If you believe you are entitled to these damages, you must file a motion for consequential damages and/or compensatory damages WITHIN 60 CALENDAR DAYS OF THE DATE OF THIS DECISION. You must file your motion with the office that issued the initial decision on your appeal.

## NOTICE TO THE PARTIES

A copy of the decision will be referred to the Special Counsel "to investigate and take appropriate action under [5 U.S.C.] section 1215," based on the determination that "there is reason to believe that a current employee may have committed a prohibited personnel practice" under 5 U.S.C. § 2302(b)(8) or section 2302(b)(9)(A)(i), (B), (C), or (D). 5 U.S.C. § 1221(f)(3). Please note

that while any Special Counsel investigation related to this decision is pending, "no disciplinary action shall be taken against any employee for any alleged prohibited activity under investigation or for any related activity without the approval of the Special Counsel." 5 U.S.C. § 1214(f).

## NOTICE OF APPEAL RIGHTS[11]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S.

---

[11] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

Court of Appeals for the Federal Circuit, which must be <u>received</u> by the court within **60 calendar days** of <u>the date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

> U.S. Court of Appeals
> for the Federal Circuit
> 717 Madison Place, N.W.
> Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) <u>Judicial or EEOC review of cases involving a claim of discrimination</u>**.  This option applies to you <u>only</u> if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination.  If so, you may obtain judicial review of this decision—<u>including a disposition of your discrimination claims</u>—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** <u>after you receive</u> this decision.   5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017).  If you have a representative in this case,

and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** <u>after your representative</u> receives this decision.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  *See* <u>42 U.S.C. § 2000e-5</u>(f) and <u>29 U.S.C. § 794a</u>.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

<u>http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx</u>.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of <u>your discrimination claims only, excluding all other issues</u>.  <u>5 U.S.C. § 7702</u>(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** <u>after you receive</u> this decision.  <u>5 U.S.C. § 7702</u>(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** <u>after your representative receives</u> this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) <u>Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012</u>**.  This option applies to you <u>only</u> if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[12]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

---

[12] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

FOR THE BOARD:                  /s/ for

Jennifer Everling
Acting Clerk of the Board

Washington, D.C.